UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARTEL LAMBO BEY, *Plaintiff*, | ) ) ) | 3:24-CV-1258 (SVN) |
| v. | ) ) | |
| CORRECTIONAL OFFICER JOHN MEGGET, *et al.*, *Defendants*. | ) ) ) | January 3, 2025 |

## INITIAL REVIEW ORDER

*Pro se* plaintiff Martel Lambo Bey[1] is a sentenced inmate currently residing at a halfway house in the custody of the Connecticut Department of Correction ("DOC").[2] Plaintiff originally filed this civil rights complaint under 42 U.S.C. § 1983 against Correctional Officer John Megget only. Compl., ECF No. 1. He later filed an amended complaint to add Defendants Deputy Warden of Operations John Doe, First Shift Commander John Doe, and Freedom of Information ("FOI") Liaison John Doe (collectively, the "Doe Defendants"), alleging an incident related to deprivation of legal paperwork during a hearing that occurred on or around June 17, 2024, while he was incarcerated at Osborn Correctional Institution ("Osborn CI"). Am. Compl., ECF No. 9. Plaintiff seeks damages and injunctive relief from all Defendants in their individual and official capacities. *Id.*

The Prison Litigation Reform Act ("PLRA") requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a

---

[1] Plaintiff notes he is "being illegally addressed as Joshua Martel Inabinett by Defendants." Am. Compl., ECF No. 9 at 5. Plaintiff has not alleged any further facts to support his claim of being "illegally addressed" by this name. Accordingly, the Court cannot determine that Plaintiff has alleged a plausible violation of his rights.
[2] The Court may "take judicial notice of matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). A search on the publicly available DOC website under the inmate search function using Plaintiff's inmate number, 268760, shows that Plaintiff was admitted to DOC on June 1, 2023, and sentenced on June 1, 2023, to three years of incarceration. The website shows Plaintiff's current location as "Aileen O'Connor," which the Court understands to be a halfway house in Connecticut.
*See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=268760 (last visited Jan. 3, 2025).

governmental entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). The Court has thoroughly reviewed all factual allegations in the amended complaint and conducted an initial review pursuant to 28 U.S.C. § 1915A.[3] Based on this initial review, the Court orders as follows.

## I. FACTUAL BACKGROUND

Because the allegations in Plaintiff's amended complaint are thin, the Court summarizes relevant facts in its discussion of his claims brought under 42 U.S.C. § 1983. The Court draws its summary of the facts largely from the exhibits Plaintiff filed with the amended complaint.

## II. DISCUSSION

Section 1983 "provides a private right of action against any person who, acting under color of state law, causes another person to be subjected to the deprivation of rights under the Constitution or federal law." *Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999). A section 1983 action has two essential elements: "(1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994) (citing *Parratt v. Taylor*, 451 U.S.

---

[3] It is well-established that "*[p]ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants). Notwithstanding this liberal interpretation, however, a *pro se* complaint will not survive dismissal unless the factual allegations meet the plausibility standard. *See Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 387 (2d Cir. 2015). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A complaint that includes only "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s] devoid of 'further factual enhancement," does not meet the facial plausibility standard. *Id.* (cleaned up; quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

527, 535 (1981)).  The Court construes Plaintiff's amended complaint to assert claims under the Fourteenth Amendment Due Process and Equal Protection Clauses, deprivation of his right to court access, and First Amendment retaliation.

### A. Access to the Courts[4]

To state a denial-of-access-to-the-courts claim, a prisoner must show that:  (1) he suffered an actual injury (2) to a non-frivolous legal claim (3) concerning his criminal conviction, habeas corpus petition, or conditions of confinement.  *Kaminski v. Semple*, 796 F. App'x 36, 38–39 (2d Cir. 2019) (summary order) (citing *Lewis v. Casey*, 518 U.S. 343, 349, 352–54 (1996)).  Thus, Plaintiff must allege that the "defendant's conduct deprived him . . . of an opportunity to press a 'nonfrivolous' and 'arguable' legal claim in court."  *Brown v. Choinski*, No. 3:09-cv-1631 (MRK), 2011 WL 1106232, at *5 (D. Conn. Mar. 23, 2011) (citing *Christopher*, 536 U.S. at 416).  And Plaintiff must allege facts to describe the underlying claim "well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope."  *Christopher*, 536 U.S. at 416.

#### 1. Officer Megget

Plaintiff asserts that on June 17, 2024, Officer Megget "hindered [his] efforts to pursue a legal claim" by not permitting him to bring his legal material with him to a discovery hearing. Am. Compl. at 7 ¶ 8; Inmate Request Form, Exhibit 1A, ECF No. 9 at 11.  He alleges that Officer Megget had his legal material sent back to his housing block without legitimate penological reason. Am. Compl. at 7 ¶ 8; ECF No. 9 at 11.  Plaintiff maintains that several of his discovery requests were denied because he was unprepared.  ECF No. 9 at 11.

---

[4] The right of access to the courts may arise under the Privileges and Immunities Clause of Article IV, section 2, the Petition Clause of the First Amendment, the Due Process Clauses of the Fifth and Fourteenth Amendments, and the Equal Protection Clause of the Fourteenth Amendment.  *See Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002).

The Court finds that Plaintiff has not stated a plausible claim of constitutional violation because he has not alleged any facts to describe the legal claim he was pursuing. Nor has Plaintiff stated a plausible claim that Officer Megget deprived him of an opportunity to pursue a nonfrivolous, arguable cause of action in court. Therefore, Plaintiff's access to the court claim against Defendant Megget must be dismissed. 28 U.S.C. § 1915A(b)(1).

2. *Doe Defendants*

Plaintiff complains the Doe Defendants also deprived him of his right to court access. Specifically, he alleges that First Shift Commander Doe and Deputy Warden Doe failed to respond to an inmate request submitted on June 17, 2024, and that FOI Liaison Doe provided no response to a June 17, 2024, inmate request to preserve video evidence. Am. Compl. at 8 ¶¶ 9–10; ECF No. 9 at 11; Inmate Request Form, Exhibit 1B, ECF No. 9 at 12.

For the same reasons as explained above with respect to Defendant Megget, Plaintiff has not alleged facts to support an inference that any of the Doe Defendants deprived him of an opportunity to pursue a nonfrivolous, arguable cause of action in court. Accordingly, Plaintiff's section 1983 access to the court claims against the Doe Defendants must be dismissed. 28 U.S.C. § 1915A(b)(1).

The Court notes that Plaintiff may be claiming that the failure of First Shift Commander Doe and Deputy Warden Doe to respond to his inmate request hindered his ability to satisfy the exhaustion requirement under the PLRA so that he could pursue a federal cause of action. But even if prison grievance procedures were made unavailable to him, Plaintiff would not be precluded by the PLRA from seeking redress for his claims in federal court. *See* 42 U.S. § 1997e(a) (requiring prisoners to exhaust administrative remedies only to the extent that the remedies are available); *Baltas v. Rivera*, No. 3:19-cv-1043 (MPS), 2019 WL 3944435, at *11 (D. Conn. Aug.

21, 2019) ("If prison officials 'thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation' the grievance procedure would be unavailable and the inmate would be able to proceed to federal court." (quoting *Ross v. Blake*, 578 U.S. 632, 644 (2016))).

    B. <u>Fourteenth Amendment Equal Protection</u>

Plaintiff also appears to assert that Defendants violated his right to equal protection under the Fourteenth Amendment. *See* Am. Compl. at 9 ¶¶ 16, 17.

A successful equal protection claim requires a plaintiff to "allege facts showing that the plaintiff was treated differently from similarly situated individuals and that the reason for the different treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Morgan v. Semple*, No. 3:16-cv-225 (VAB), 2020 WL 2198117, at *19 (D. Conn. May 6, 2020).

Absent a suspect classification, a plaintiff may proceed under a "class of one" theory by "alleg[ing] that [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Fortress Bible Church v. Feiner*, 694 F.3d 208, 222 (2d Cir. 2012) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

The Court finds that Plaintiff has not stated a plausible equal protection claim. First, Plaintiff has not alleged membership in a suspect class for purposes of his equal protection claim because "prisoners in general are not a suspect class." *Rahim v. Martin*, No. 3:23-cv-298 (MPS), 2023 WL 4745536, at *7 (D. Conn. July 25, 2023). Plaintiff has provided no information about any other potential protected class to which he may belong. Second, Plaintiff fails to allege a

successful equal protection claim under a "class of one" theory of discrimination. To succeed on this theory, Plaintiff "must demonstrate the existence of a 'comparator'—someone who is 'prima facie identical'—who was treated differently." *Williams v. Mulligan*, No. 3:23-CV-725 (SVN), 2023 WL 8258913, at *8 (D. Conn. Nov. 29, 2023). But Plaintiff has not identified any such comparator to support an inference of an equal protection violation. Accordingly, Plaintiff's claim of a violation of the Fourteenth Amendment's Equal Protection Clause is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

C. Fourteenth Amendment Due Process

The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property. U.S Const. amend. XIV, § 1. Procedural due process prohibits deprivations of life, liberty, or property without constitutionally adequate procedures. *Case v. Anderson*, No. 16 Civ. 983 (NSR), 2017 WL 3701863, at *14 (S.D.N.Y. Aug. 25, 2017). In the prison context, which involves persons whose liberty interests have already been severely restricted because of their confinement, a plaintiff cannot show a cognizable deprivation of "liberty" unless he can show that he was subject to an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Ruggiero v. Fischer*, 807 F. App'x 70, 73 (2d Cir. 2020) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

1. *First Shift Commander Doe and Deputy Warden Doe*

Plaintiff alleges that First Shift Commander Doe and Deputy Warden Doe violated his Fourteenth Amendment rights by failing to respond to his inmate request and showing deliberate indifference to his lack of access to the courts. Am. Compl. at 8 ¶ 9.

Mandatory language in a prison directive or regulation alone does not create a liberty interest. *See Sandin,* 515 U.S. at 483 (departing from the then-usual practice of courts to "search

6

for a negative implication from mandatory language in prisoner regulations" because such a practice "strayed from the real concerns undergirding the liberty protected by the Due Process Clause"). Thus, allegations of a failure to comply with state-created procedures does not implicate due process rights absent facts indicating a deprivation that is atypical and significant. *See Fernandez v. Armstrong*, No. 3:02-cv-2252 (CFD), 2005 WL 733664, at *10 (D. Conn. Mar. 30, 2005) (explaining "mandatory language in a prison directive or regulation does not in and of itself create a liberty interest" (citing *Sandin*, 515 U.S. at 483)); *see also Sandin,* 515 U.S. at 481–82 (noting prison directives, which are designed primarily to guide correctional staff, do not confer rights on inmates); *Riddick v. Chevalier*, No. 3:11-cv-1555 (SRU), 2013 WL 4823153, at *4 (D. Conn. Sept. 9, 2013) ("State prison directives do not confer any constitutionally protected rights on inmates . . . . Fourteenth Amendment due process protections are not implicated by the defendants' alleged failure to comply with administrative directives."). And "[i]nmates have no constitutional entitlement to grievance procedures, to receive a response to a grievance, or to have a grievance processed properly." *Schlosser v. Manuel*, No. 3:19-cv-1444 (SRU), 2020 WL 127700, at *5 (D. Conn. Jan. 10, 2020).

Because Plaintiff does not allege any facts beyond denial of access to an administrative remedy, he has not stated a cognizable violation of his Fourteenth Amendment due process rights arising from First Shift Commander Doe's and Deputy Warden Doe's alleged failure to respond to his inmate request. As a result, Plaintiff's Fourteenth Amendment due process claims against First Shift Commander Doe and Deputy Warden Doe are dismissed. 28 U.S.C. § 1915A(b)(1).

### 2. FOI Liaison Doe

Likewise, Plaintiff cannot assert a plausible claim that FOI Liaison Doe violated his Fourteenth Amendment due process rights by failing to respond to his inmate request for

preservation of video evidence. As noted above, allegations of a failure to comply with state-created procedures do not implicate due process rights absent facts indicating a deprivation that is atypical and significant. *Ruggiero*, 807 F. App'x at 73 (citing *Sandin*, 515 U.S. at 484). In addition, the federal Freedom of Information Act "applies only to federal and not to state agencies." *Petion v. Pearson*, No. 3:22-cv-1647 (OAW), 2023 WL 6050054, at *3 (D. Conn. Sept. 15, 2023). To the extent Plaintiff alleges violations of the analogous state freedom of information law, he has a state law remedy under Connecticut General Statutes § 1-206(b)(1), which provides a right of appeal to the Freedom of Information Commission. *Id.* Accordingly, denial of an FOI request does not implicate Plaintiff's Fourteenth Amendment due process rights, and Plaintiff's Fourteenth Amendment due process claim against FOI Liaison Doe must be dismissed. 28 U.S.C. § 1915A(b)(1).

D. <u>First Amendment Retaliation</u>

Plaintiff also asserts that Officer Megget and the Doe Defendants retaliated against him by preventing him from bringing his legal documents to his discovery hearing and by ignoring his inmate requests, respectively. Am. Compl. at 7–8 ¶¶ 8–10.

To plead a First Amendment retaliation claim, a plaintiff must plausibly allege: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019). The Second Circuit has "instructed district courts to approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015). Consequently,

the Second Circuit has required that prisoner retaliation claims "be supported by specific and detailed factual allegations, not stated in wholly conclusory terms." *Id.*

Plaintiff's amended complaint does not satisfy the first element of a retaliation claim, as he does not specify what protected speech he engaged in that in turn resulted in the alleged adverse action of depriving him of his legal papers and ignoring his inmate requests. While the filing of administrative grievances and lawsuits are constitutionally protected activities, *Stewart v. Ayala*, No. 3:20-cv-1938 (CSH), 2022 WL 4356467, at *8 (D. Conn. Sept. 20, 2022) (citing cases), Plaintiff does not attempt to connect the filing of any suit or grievance to Defendants' alleged behavior. By providing no details about the lawsuit in which the discovery hearing took place or any earlier grievances he may have filed, Plaintiff fails to allege a basic requirement of a retaliation claim: protected speech.

Second, even assuming Officer Megget's interference in Plaintiff's discovery hearing and the Doe Defendants' failure to respond to Plaintiff's grievances satisfies the second element (adverse action), Plaintiff has not alleged a causal connection between his protected activity and the adverse action. Plaintiff generally asserts in conclusory terms that Defendants retaliated against him. As to Officer Megget, Plaintiff fails to allege any non-conclusory facts to support his claim that Officer Megget acted with a retaliatory motive due to any of Plaintiff's alleged protected activity. Relevant to the Doe Defendants, Plaintiff fails to allege any specific facts to suggest the Doe Defendants were even aware of any underlying lawsuit or the grievances Plaintiff filed after Officer Megget's conduct. *See Schlosser*, 2020 WL 127700, at *4 (dismissing retaliation claims where plaintiff had not alleged a causal connection between protected activity and adverse action because no facts reflected defendant was aware of his protected activity). Nor does he allege any

9

other specific facts demonstrating that the Doe Defendants' failure to respond to his inmate requests was motivated by retaliation against any alleged protected activity.

Consistent with the Second Circuit's instruction to approach retaliation claims with some measure of skepticism, *see Dolan*, 794 F.3d at 295, the Court dismisses Plaintiff's conclusory claims of First Amendment retaliation. 28 U.S.C. § 1915A(b)(1).

E. <u>Official Capacity Claims</u>

Plaintiff seeks a preliminary and permanent injunctive order to protect him against retaliatory acts such as disciplinary charges, denial of program participation, physical abuse, or other retaliatory acts. Am. Compl. at 9 ¶ 15. He also seeks money damages from Officer Megget "for the injury suffered at" his discovery hearing and from the Doe Defendants for their "deliberate indifference" to Plaintiff's lack access to the courts. *Id.* at 9 ¶¶ 16–17.

A plaintiff may proceed for injunctive or declaratory relief against a defendant in his or her official capacity only to the extent he alleges an ongoing constitutional violation. *See Va. Off. for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254–55 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)). "In the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons." *Fisher v. Goord*, 981 F. Supp. 140, 167 (W.D.N.Y. 1997) (citing *Farmer v. Brennan*, 511 U.S. 825, 846–47 (1994)).

Plaintiff's claims in this action are against DOC employees who work at Osborn CI. *See* Am. Compl. at 3. Because Plaintiff is no longer housed at Osborn CI, his requests for official capacity relief against Defendants are moot. *See Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) (an inmate's transfer from a correctional facility generally moots claims for declaratory and injunctive relief against officials at that facility). Additionally, any claims based on constitutional

violations for money damages against Defendants in their official capacities are dismissed as barred by the Eleventh Amendment, as all Defendants are state employees. *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

Accordingly, Plaintiff's claims against Defendants in their official capacities are dismissed.

### III.  CONCLUSION

Accordingly, Plaintiff's amended complaint is DISMISSED for failure to state any plausible claims.  *See* 28 U.S.C. § 1915A(b)(1).

The Court will afford Plaintiff one opportunity to file a Second Amended Complaint if he believes he can correct the deficiencies of his claims as identified by this Order.  A Second Amended Complaint, if filed, will completely replace this amended complaint, and the Court will not consider any allegations made in this amended complaint in evaluating the Second Amended Complaint.  The Second Amended Complaint must be filed on or before February 3, 2025.  If Plaintiff does not file a Second Amended Complaint by that date, the Court will close this case.

**SO ORDERED** at Hartford, Connecticut, this 3rd day of January, 2025.

                                                    */s/ Sarala V. Nagala*
                                                    SARALA V. NAGALA
                                                    UNITED STATES DISTRICT JUDGE